JACOB E. MARKEL AND THOMAS SWOBE, PLAINTIFFS IN ERROR, V. JOSEPH MOUDY AND OTHERS, DEFENDANTS IN ERROR.

1. **Deceit:** EVIDENCE. In an action for deceit in the sale of an eating house, fixtures, and furniture, by false representations as to the amount of business done, and profits realized by the sellers while keeping the house, and as to what the business would be in the future, *held*, that the representations as to the past business were material and admissible in evidence, but that those concerning the future were not.

2. **Evidence by Comparison.** A comparison between the respective styles in which the house was kept by the plaintiffs and the defendants, together with the material circumstances attending each, was admissible only as tending to show that the representations, if made, were false. A comparison between the manner in which the house was kept by the plaintiffs and by strangers, was immaterial and inadmissible.

3. **Charge to Jury.** In charging a jury, undue prominence should not be given to one branch or item of evidence, by particular mention, to the disparagement of the rest.

4. **Damages.** The rule of damages in this case held to be simply the difference, if any, between the price paid for the property and its actual value at the time of the purchase.

ERROR to the district court of Dodge county.    Tried
below before POST, J.

*Marlow & Munger*, for plaintiffs in error, cited *Fouty
v. Fouty*, 34 Ind., 433.    *State v. Prather*, 44 Id., 287.
*Hazlett v. Burge*, 22 Ia., 535.    *Morrison v. Koch*, 32
Wis., 254.

*E. F. Gray*, for defendant in error, cited *Shaeffer v.
Sleude*, 7 Blackf., 178.    *Nowlan v. Cain*, 3 Allen, 261.
*Miller v. Barber*, 66 N. Y., 558.    *Faribault v. Slater*, 13
Minn., 223.    Smith Lead. Cas., 284, 301.    Cooley on
Torts, 491.    *Sandford v. Handy*, 23 Wend., 260.    *Sharp
v. Mayor*, 40 Barb., 256.    2 Wharton Ev.    *Simar v.
Conady*, 53 N. Y., 298.    3 Wait's Actions and De-
fenses, 436.    *Allen v. Hart*, 72 Ill., 104.    *Martin v.
Jordan*, 60 Me., 531.

LAKE, J.

This is a petition in error from Dodge county.
The action below was for damages caused by deceit
in the sale of an eating house, fixtures, and furniture,
situated in Fremont, on the line of the Union Pacific
railroad.

The alleged deception consisted of false representa-
tions as to the amount of profit realized by the sellers
from the business of the house during the preceding
year, and also as to what the purchasers would realize
from the business in the future.    This being in issue, evi-
dence tending to prove such representations to have
been made was offered, and admitted against objec-
tions by the defendants on the ground of immateriality.
The admission of this evidence is now made a ground
of alleged error.

The averment of false representations as to the

amount of business done by Markel & Co. was material, and the evidence to support it clearly admissible. Not so, however, of that respecting the future business of the house. What would be done thereafter it was impossible then to know. Whether the business of succeeding years would be large or small, profitable or otherwise, depended upon so many different circumstances, which might or might not happen, that its measurement in advance, as the purchasers must have known, or rather were bound to know, rested on mere conjecture. If the sellers gave truthful information concerning *existing* facts and circumstances inquired of, that was all the purchasers had a right to expect, or to confide in as coming from them. With this, they were in as favorable a situation to judge of the future business of the house as were Markel & Co., and became subject to the rule, *caveat emptor. Morrison v. Koch*, 32 Wis., 245. *Hazlett v. Burge*, 22 Ia., 535. *State v. Prather et al.*, 44 Ind., 287. *Perkins v. Lougee*, 6 Neb., 220. Chitty on Contracts, 398 (marginal).

Counsel for Markel & Co. even contend in argument that inasmuch as the business of keeping the eating house was not mentioned in the contract as a subject of sale, their representations of what they had realized therefrom were immaterial. To this view we cannot give assent. To a purchaser of this sort of property, the amount of business being done in it, or that has been done, under known circumstances, is doubtless a very important item in determining its value. This house was bought by the defendants in error, as Markel & Co. well understood, for the purpose of engaging in the business for which it was intended, and for which it was then being used. There is no pretence that it was bought for any other use, or that it was adapted to any other than the one made of it by Markel & Co. We regard *these* representations, therefore,

they being of an existing fact, peculiarly within the knowledge of the seller, as very material evidence, and that they were properly admitted. In *Hutchinson v. Morley*, 7 Scott, 341, it was held that misrepresentations as to the amount of business done at a public house were good ground for avoiding a sale of fixtures, "although the contract excluded the good will." And the same facts are admissible in evidence, whether the action be to avoid the sale, or to recover damages occasioned by it.

It is also assigned for error that evidence was admitted to show how the house was kept by the defendants in error, in comparison with the style in which it was subsequently kept by another party. This evidence was inadmissible. The only comparison that could properly have been made was as between the styles maintained by these parties, the plaintiffs and defendants, during the times they severally had it in charge. And even this was admissible only as tending to show that if Markel & Co. made the representations alleged as to their income from the business, they were guilty of deception. For this purpose it was proper; for if the house were as well kept, and all the other circumstances affecting the business, such as the running and stoppage of trains, amount of travel, etc., were as favorable when kept by the defendants in error as while it was in charge of Markel & Co., the inference would be that their respective incomes therefrom could not have differed materially. All things else being equal, if the average daily receipts of the former were only $46.10, one would hesitate to believe that those of the latter were $65, the amount they were charged with representing them to have been.

The charge to the jury on this subject, with a single exception which we shall hereafter notice, was right. The comparison as to the manner of keeping the house

was limited, so far as it could be by an instruction, to
the periods when it was run by these parties.    But the
objectionable comparison had been made in the face of
objection, the testimony was before the jury, and it
was of a character tending to prejudice Markel & Co.
Under these circumstances we do not think the instruc-
tion should be held to cure the error in the admission
of the evidence.    The rule would probably be other-
wise if this evidence had been admitted inadvertently,
and, on objection, promptly withdrawn from the con-
sideration of the jury.                         .

The first of the instructions on which error is claimed
by counsel in their brief is in these words:  "In order
to determine whether or not the said representations
of defendants were or not false, if you find he made
representations as alleged by plaintiffs, you may con-
sider the evidence as to the manner the eating house
was kept by the plaintiffs, and whether as good or bet-
ter, or not as good as kept by defendants.    If, from the
evidence, you find it was as well kept by plaintiffs as
by defendants the year then just past, or averagely well
kept by the plaintiffs, and that plaintiffs were not able
to receive from the business of the house more than
$46.10 per day, if such be true, it would be proper for
you to consider this evidence in determining what the
house had probably done per day during the past year."
That is, while Markel & Co. had kept it.

This instruction is faulty in at least two particulars.
*First*—In calling special attention to the comparison,
"as to the manner the eating house was kept," and
the daily receipts by the plaintiffs, as the particular
evidence from which they might determine the receipts
of Markel & Co.    This matter of comparison was not
the only evidence on this point.    The witness, Nickles,
who was superintendent of the house under Markel &
Co., swore positively that the average daily receipts

were from sixty to sixty-five dollars, and there was other testimony to the same effect. There were other things besides "the manner the eating house was kept" that might have seriously affected the receipts, among which may be mentioned, the season of the year, the amount of travel over the road, and the facilities afforded by the stoppage of trains for travellers to patronize the house. There was testimony on all of these points which ought not to have been thrown into the back-ground by omitting to mention it, and by giving undue prominence to testimony tending to prove that the comparatively meagre receipts were not owing to the manner in which plaintiffs kept the house.

The *second* objection we make to this instruction is to the clause, "or averagely well kept by the plaintiffs." Just what comparison was referred to by the use of this newly-coined word, *"averagely,"* is not clear, but, whatever it may have been, it was not the proper standard for this case, wherein, as we have already shown, the only comparison permissible was that between the house as kept by the plaintiffs and by the defendants respectively.

The mode adopted by the court of arriving at the amount of damages, if any, caused by the misrepresentations complained of, was clearly erroneous. By the fifth instruction, the jury were told that "from the evidence of such representations, and other evidence in the case," they were to "determine what the value of the property would have been at the time of such sale to the plaintiffs if such representations had been true," which the court styled *"the value as represented."* This done, the jury were then to "determine the actual value of the eating house and property at the time of the sale to the plaintiffs, and then subtract the actual value so found from the value as represented as aforesaid, and the difference, or the excess of the value as

represented, over and above such actual value, will be the amount of damages to be allowed the plaintiffs," etc.

There was nothing in the case, either in the pleadings or the evidence, to justify this instruction. No representations were made, or charged to have been made by Markel & Co., as to the actual value of the property sold, which consisted solely of the building, fixtures, and furniture, all particularly described in the written contract of sale. The representations complained of were of the business Markel & Co. had done in the house, and not as to the capacity of the house itself. The damages alleged to have been sustained were not in consequence of the want of sufficient capacity in the house to do all Markel & Co. represented they had done, but because of the want of adequate patronage. There was no such thing, therefore, for the jury to find as, "*the value as represented.*" But, even if there had been, it was not competent for them to ascertain it in the manner above indicated. The value of an article when in controversy must be ascertained from the testimony of witnesses competent to judge of it. It is a fact to be proved. Conceding, however, that Markel & Co. did exaggerate the income from their business, even to an extent far beyond what the defendants in error were able to realize under equally favorable circumstances, it would by no means necessarily follow that the consideration paid for the property used in the prosecution of that business exceeded its real value, and if it did not exceed it, then no damage which the law will recognize was done. We consider the rule of damages in a case like this to be simply the difference, if any, between the price paid for the property and its actual value at the time of the purchase. This would certainly be just, for if the purchaser paid no more than the property was worth, he

sustained no damage in consequence of the alleged fraud.

The ninth instruction requested by the plaintiffs in error, and rejected by the court, ought to have been given. It was in these words: "The fact that the plaintiffs did not, and could not, make any net profits in operating said eating house during the time they so owned and operated it, does not of itself prove the representations of defendants, that they had prior to that time made larger profits, to be false."

This instruction not only stated the law correctly, but was peculiarly applicable to the testimony upon which the jury were to pass. The fact that the plaintiffs did not make any profits from the business was abundantly proved and not disputed. The other material facts on which they relied to make out their case were disputed, and might not be found. It was important, therefore, to Markel & Co. that the jury should be instructed to draw no unwarrantable conclusion from this conceded fact alone. In order to make the failure of the purchasers to realize the amount of profits they were led to expect of any consequence it was necessary to know all the circumstances, and they were many, affecting the business from which those profits were to come. In proving the alleged representations to have been made, it was necessary clearly to establish their falsity, which manifestly could not be done by merely proving that the plaintiffs had, perchance, failed to realize as much from the business as Markel & Co., by those representations, claimed to have done.

For these reasons, the judgment must be reversed and the cause remanded to the court below for a new trial.

REVERSED AND REMANDED.