JACOB E. MARKEL AND THOMAS SWOBE, PLAINTIFFS IN ERROR, v. JOSEPH MOUDY, ET AL., DEFENDANTS IN ERROR.

1. **Deceit:** DAMAGES FOR: EVIDENCE. In an action for deceit in the sale of a railroad eating-house, fixtures, furniture, and the business of keeping it, as a whole, and for a single unapportionable consideration, the value of the house, etc., estimated separately from the business, and without reference to it, is not a proper basis for computing the damages. The value of the business also should be included.

2. **Railroad Eating-House:** RECEIPTS OF. In estimating the probable receipts of a railroad eating-house, the amount of travel over the road is material, if accompanied by evidence as to the facilities afforded to passengers, by the stoppage of trains, to patronize the house.

3. **Witness:** CROSS EXAMINATION OF. A witness called to estimate the value of property, fixed it at $3,000. On his cross-examination it was offered to prove by him that, as an insurance agent, he had offered and written a policy of insurance upon the same property at a valuation of $4,000, but the offer was rejected. *Held*, error.

4. ———: ———. Statements or admissions made by a witness out of court in conflict with his testimony on the trial, may be shown on cross examination. Rule applied.

ERROR to the district court for Dodge county. Tried below before POST, J.

*W. H. Munger*, for plaintiffs in error.

*N. H. Bell* for defendants in error.

LAKE, CH. J.

This is a proceeding in error to reverse a judgment of the district court for Dodge county.

The defendants in error were plaintiffs below, and their cause of action as made by the petition was deceit in the sale to them by the plaintiffs in error of an eating-house, fixtures and furniture, together with the business of keeping the same, in Fremont, on the line of the Union Pacific railroad.

The questions presented for our present consideration arose on the trial before a jury, and are in many respects similar to some of those decided in *Markel v. Moudy*, 11 Neb., 213.

Perhaps we were not quite so explicit in deciding that case as we ought to have been in the matter of the proper mode of valuing the property as a basis for estimating dam-

ages, if any there were, which the Moudys were entitled to recover. We there simply stated, in general terms, the rule to be " the difference, if any, between the price paid for the property and its actual value at the time of the purchase," which "must be ascertained from the testimony of witnesses competent to judge of it." By this, however, we by no means intended to be understood as holding, or even intimating, that the value of the house could be taken without reference to the business for which it was specially intended, and which it is settled by the pleadings was included within the purchase as an entire property.

The house was intended, bought, and used, solely for the purpose of conducting in it the business of keeping a railrood eating-house at the place where it stood. For this particular purpose, it is reasonable to presume that it had a peculiar value, while for any other, or disconnected entirely from that business, and considered as an "old building," as it was by the witnesses, it probably had comparatively little. Therefore, upon the question of the value of the property purchased, the defendant in error should have been required to produce witnesses having some knowledge of such business, and of the adaptiveness of the house and fixtures to that business, and thus have had its value fairly estimated as a whole. This, however, was not done. The witnesses called, not only did not profess to have a knowledge of this business, but, judging from their avocations, they being carpenters merely, evidently had none which could aid the jury in reaching a just conclusion. And these witnesses were permitted, against objection, to give their opinions as to the value of the house alone, as "an old building" and without the least reference whatever to the business carried on in it. As showing the necessary connection of the business of keeping the eating-house with the house itself, it is only necessary to refer to the last charging paragraph of the petition, which is in these words: " And that said personal property (referring to the house,

fixtures and furniture,) *and business aforesaid,* at the time of said sale and purchase, and ever since, have been without benefit or value to said plaintiffs, and utterly worthless, whereby the plaintiffs have sustained damage, as they aver, to the amount of eight thousand dollars." This was denied in the answer.

The matter in issue being, then, the alleged worthlessness of the "personal property and business," which was purchased as a whole, for a single and unapportionable consideration, the absolute necessity of including that business in estimating the value of the purchase is apparent. Yet, notwithstanding this, not a single witness was called on the part of the defendant in error as to what the tangible property and business, taken together as a unit, was really worth. This want of evidence as to the value of the business included in the sale renders the verdict erroneous for want of evidence to support it.

It is assigned for error that testimony was admitted against objection as to the comparative amount of travel over the Union Pacific road during the years 1876, 1877, and 1878. This testimony would have been material and entirely competent if it had been followed by a showing that opportunity was given, by the stoppage of trains, during the time the Moudys were there, for the passengers upon them to patronize the house. We find, however, that as to the stoppage of passenger trains during the time in question there is a total want of evidence, so that the amount of travel over the road was wholly immaterial.

And while upon this matter, we may as well dispose of another question intimately connected with the stoppage of trains, and raised by a part of the fifth instruction given to the jury.

The alleged deceit in making the sale consisted of certain false statements respecting the sellers' receipts from the business during the time they had conducted it. There was no complaint as to the house, fixtures, or furniture.

No misrepresentations are charged to have been made as to them. As tending to prove that the alleged representations, if made, were false, the defendants in error sought to show, and this was proper, that under equally favorable circumstances to those of the year preceding their purchase the receipts from the business were very much less than Markel had represented them to have been while he and his partner conducted it.

Upon this point, the fifth instruction was given, in which this language was used: "If you find from the evidence that the house was as well kept by plaintiffs as it had been by the defendants before plaintiffs took it; and if you find that the circumstances, such as *the running and stoppage of trains*, the amount of travel, etc., were as favorable for the plaintiffs as they had been for the defendants while they were conducting the business; * * * that under such circumstances the plaintiffs could only receive an average of $46.10 per day * * * such facts would be competent to consider as tending to prove that Markel & Co. did not, while they were in charge of the house, receive the sum of $60 or $65 per day."

This instruction was upon a very material branch of the case, and it erroneously, as we think, gave the jury to understand that there was evidence before them from which they could properly find that, in the matter of the stoppage of trains, the Moudys were as favorably circumstanced as Markel & Co. had been, when in fact there was none whatever. There was evidence to the effect that travel over the road was as extensive after the sale to the Moudys as it had been before, and it is quite likely that, from this fact alone, in view of the court's instruction, the jury may have inferred that the trains were run as favorably for them as they had been for Markel & Co. But they had no right to do so. The plan upon which trains were run, their rules of stoppage, and the opportunity afforded to passengers for taking meals at this particular station were

all susceptible of clear proof, and it ought to have been made. The error of this instruction is sufficient ground for a new trial. *Meredith v. Kennard,* 1 Neb., 312. *Meyer v. Midland Pacific R. Co.,* 2 Id., 319. *Newton Wagon Co. v. Diers,* 10 Id., 285. *City of Crete v. Childs,* 11 Id., 252. *Sheldon v. Williams,* Id., 272.

Several errors are complained of in the rulings of the judge upon the admissibility of evidence. Some of these which seem to be of importance we will notice.

Check Toncray, a witness called by the defendants in error to testify as to the value of the building and fixtures, had fixed it at $3,000. On his cross-examination it was proposed to show, and a question to that end was put to him, that, as an insurance agent, he had offered to place, and had actually written a policy of insurance upon it at a valuation of $4,000, but it was rejected. We think this ruling was clearly erroneous. The proposed testimony was material and competent as tending to discredit the valuation put upon the property in his testimony in chief. It was admissible upon the same principle that permits statements made by the witness out of court different from what he had testified at the trial to be shown. 1 Greenleaf on Ev., sec. 462. The value of the proposed testimony as tending to discredit the witness rests upon the very reasonable presumption that he would not, in the very important matter of taking an insurance risk, value the property higher than what he really believed it to be worth.

Again, on the cross examination of Joseph Moudy, one of the parties to the suit, who had testified in chief in support of the alleged unprofitableness of the business, he was shown the following notice, which he admitted was given by himself: "*For Sale.*—Railroad eating-house, with furniture and good will, on line of Union Pacific R. R. in Nebraska; regular eating-house for all trains; large trains and large profits; terms, part cash and part on time. For particulars, address J. Moudy, Fremont, Neb." Thereupon

it was offered in evidence, but the court excluded it on an objection made by the defendants in error that it was "irrelevant, incompetent, and not proper cross examination." This was error.   The notice was certainly admissible over this objection.   It was a concession by the witness, made out of court, and in conflict with the testimony he had given to the jury.   It was the right of the plaintiffs in error to have the notice itself go hand in hand with the admission of the witness that he had given it.   The judgment must be reversed and a new trial granted.

REVERSED AND REMANDED.