**YODER et al. v. NU–ENAMEL CORPORATION.**

No. 12888.

Circuit Court of Appeals, Eighth Circuit.

Nov. 2, 1944.

Sterling F. Mutz, of Lincoln, Neb., for appellants.

G. W. Becker, of Omaha, Neb. (I. J. Dunn and I. Ziegler, both of Omaha, Neb., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The action is one under Nebraska law for fraud in inducing plaintiffs (1) to purchase a wholesale paint-distributing business and four retail stores, all of which defendant was itself operating at the time as an outlet for its paint products, and (2) to make expenditures of time and money in attempting to carry on the misrepresented business.

The trial court directed a verdict for defendant at the close of plaintiffs' evidence, on the ground that the damages which plaintiffs were attempting to claim were not such as could be recovered for fraud in the sale of property under Nebraska law.

Plaintiffs have construed some of the court's remarks, in ruling on the motion for directed verdict, as intended to hold also that there was no proof of any fraud which could have been submitted to a jury, but we do not so read the court's statement. The court made a critical analysis of plaintiffs' evidence, but it nevertheless declared that, as to part of the charges, "there is some evidence of fraud", and, "if that issue were the only one that the court were studying, the case would go to the jury."

On the record as it stands, we think it would have to be held that plaintiffs had made submissible proof of materiality, falsity, intent to induce action, and reliance, as to the charges in the petition[1] that defendant had stated (1) that the business had been making a profit for the two preceding years, when it had been operating at a loss; (2) that the volume of the wholesale business had been constantly and steadily increasing, when it had not; and (3) that defendant had 64 retail dealers in the territory as outlets for the wholesale business, when the number at the time was quite materially less.[2]

---

[1] The petition contained other charges of fraud than those referred to in the opinion, on which the trial court expressed the views that one was in effect a repetition of previous charges; that two others were not sufficiently proved; and that the rest were not such as of themselves would be actionable. These views appear to have been proper on the record, except that it should be indicated that the record does not enable us to test the court's statement that there was no proof of the substantial falsity of defendant's representation that the sales of the wholesale business for a preceding ten-months period had been over $34,000. The alleged falsity consisted in having included in the tabulation of wholesale sales, which defendant furnished plaintiffs, the transfers of merchandise which had been made from one of defendant's retail stores to another, and which were not revenue transactions. Whether these merchandise transfers constituted a possibly material part of the represented sales-volume seems to have depended upon the substantiality of their amount as shown by "Exhibit 18", which was duly received in evidence, but which plaintiffs have failed to make a part of the record in this court, and whose total is not otherwise made to appear. Under these circumstances, we necessarily must assume that "Exhibit 18" justified the court's statement, since the record does not demonstrate that the statement was erroneous.

[2] The trial court indicated a doubt as to the sufficiency of plaintiffs' evidence on this charge, declaring that "the degree of activity, the immediate currency of some of the accounts, seem to be pretty fine-spun points upon which to ground a claim of fraud." There was

Our immediate inquiry then is as to the correctness of the trial court's ruling on the question of damages.

Plaintiffs' petition alleged that they had been induced by defendant's false representations to pay $6,000 for the business, which consisted of the going concern, its stock of merchandise, fixtures, and good will. They pleaded and attempted to prove, as the elements and measure of their recovery for the fraud, only specific items of damage, such as (1) loss of the sum of $1,800, because they had paid for good will which did not exist; (2) loss of the sum of $2,130.34, because the inventory value used for the stock of paint was that much higher than what a stock of other paint of similar quality would have been purchasable for on the general market; and (3) loss of the sum of $5,252.05,[3] as special damages sustained from operating losses, other outlays of cash, and the value of the time spent by plaintiffs in carrying on the misrepresented business.

It was the trial court's view that under Nebraska law general damages for fraud in the sale of property can only be measured and recovered by proof of the difference between the actual value of the property at the time of the purchase and the value it would have had if the seller's representations had been true; that where property has been sold componently, as part, for instance, of a going business, the test to be applied to any such property, in measuring the general damages, "is not the naked value of the thing itself, but of the thing in association with the purpose for which it was purchased"; that the recovery right for fraud in Nebraska is limited to general damages only; and that in no such case can the purchaser be permitted to plead and prove the existence of any special damages.

## I.

There can be no question, from the decisions of the Nebraska Supreme Court, that the trial court properly held that the measure of general damages for fraud in inducing the purchase of property is the difference between the actual value of the property at the time of the purchase and the value it would have had if the seller's representations had been true. This rule has consistently been adhered to and many times repeated, from the time of Young v. Filley, 1886, 19 Neb. 543, 26 N.W. 256,[4] down to the most recent reported expression in Welch v. Reeves, 1942, 142 Neb. 171, 5 N.W.2d 275, 277.

Nor can there be any doubt that the trial court also was right in holding that, under this rule, where property has been sold componently, as part, for instance, of a going business, for an entirety of consideration, the proof of values from which the fraud damages are determinable must relate to the purchase-whole, and not to items of the property in attempted segregation.

Thus, in Markel v. Moudy, 13 Neb. 322, 14 N.W. 409, where the action was one for fraud in the sale of an eating house (constituting personal property) and the furniture and fixtures and business thereof, for which plaintiffs had paid $8,000, the court held that proof as to the physical worthlessness of the building was not a competent basis for determining the existence or amount of any damages from fraud in the purchase transaction. The opinion says, 13 Neb. at pages 323 and 325, 14 N.W. at pages 410 and 411: "The matter in issue being, then, the alleged worthlessness of the 'personal property and business,' which was purchased as a whole, for a single and unapportionable consideration, the absolute necessity of including that

---

testimony, however, to show that defendant had represented that it had 64 dealers, and evidence which, prima facie and without dissipating proof, would have permitted a jury to find that there were only 31 or 32 dealers actually handling defendant's products in the territory at the time. As the record stood, it therefore would have required that the question of misrepresentation on this charge also be submitted to the jury.

[3] This sum was broken down into several specific amounts in the petition, but the details of the items involved are not presently important and they need not be enumerated here.

[4] The first Nebraska fraud decision, Markel v. Moudy, 1881, 11 Neb. 213, 7 N.W. 853, 856, applied the "out-of-pocket-loss" rule as the measure of general damages, i. e., "the difference, if any, between the price paid for the property and its actual value at the time of the purchase." In the next case that arose, however, Young v. Filley, supra, the court committed itself to the "benefit-of-the-bargain" rule, which it has ever since followed.

business in estimating the value of the purchase is apparent. Yet, notwithstanding this, not a single witness was called on the part of [plaintiffs] as to what the tangible property and business, taken together as a unit, was really worth. This want of evidence as to the value of the business included in the sale renders the verdict erroneous for want of evidence to support it."

A bit more remotely to the present situation, the court also said in Theisen v. Peterson, 114 Neb. 150, 211 N.W. 19, 21, where there was a cross-petition to recover damages for fraud in the sale of a stock farm and the cattle and hogs being raised thereon, for which in that case there had been separate considerations, that "no evidence was offered by either side as to the real value of the cattle and hogs as part of the equipment of a stock farm, which is the proper test; [the purchaser] claims that they were only worth what they would sell for on the stock market, but this is clearly incorrect as [he] was not purchasing them for slaughter."

▉ And so, in the present case, plaintiffs' attempt to evaluate the good will and the stock of paint out of relation to the purchase-whole would no more constitute proof of any general damages from the fraud than did the proof made in the Markel case, 13 Neb. 322, 14 N.W. 409, of the worthlessness of the building. The $6,000 which plaintiffs had paid was the consideration for the going business and its furniture, fixtures, stock of merchandise, and good will, as an entirety. The mere fact that, in seeking to arrive at an acceptable consideration for the purchase-whole, the parties placed a component bargaining figure of $1,800 upon the good will and $3,000 upon the stock of paint did not under the circumstances of the transaction give the transfer of the good will or of the stock of paint the effect of a separable sale. Nor, as a matter of fact, did plaintiffs' petition purport to plead that they were intended as or were equivalent to separable sales. Plaintiffs have merely mistakenly attempted, in their pleading and proof, to vivisect their general-damage whole into convenient elements and then to evalue and aggregate these elements without regard to their prior relationship and componency.

▉ But, even if the transaction had been such as to constitute in effect separable sales of the good will and of the stock of paint, these items would still, under the

Theisen case, 114 Neb. 150, 211 N.W. 19, have had to be evalued on the basis of the business purpose for which they were purchased, and not as market abstractions. And, as to the proof offered by plaintiffs of the value of the stock of paint, it might further appropriately be added that, on the fraud which the petition sought to make the basis of recovery here, the fact that a stock of paint of some other brand might have been purchasable for less than the prices which defendant had fixed for its nationally-known product could hardly constitute a competent factor in the computation of plaintiffs' general damages by any rule. Plaintiffs did not charge or attempt to prove that any representation had been made as to the comparative prices of defendant's product and those of other manufacturers. The paint stock was not sold as one of general paint, but as a distributor's supply of defendant's product, for meeting the demands of the trade for that particular brand of paint. The paint of some other manufacturer, no matter at what price it was purchasable, could hardly have served the needs of a business whose admitted purpose and obligation were to distribute defendant's product. Nor as a matter of fact would it have been possible for plaintiffs to try to claim on any theory of damages that the stock of paint was not worth the figure placed upon it in the bargaining negotiations, for the record shows that the stock actually had been turned over a number of times, on the basis of defendant's established prices, during the two-year period that plaintiffs continued to operate the business.

If the trial court's ruling on the sufficiency and competency of plaintiffs' proof of general damages, therefore, were all that was involved here, the judgment clearly would have to be affirmed.

## II.

But the trial court further held that under Nebraska law nothing except general damages could be proved or recovered for fraud, and it refused to permit plaintiffs to make proof of any of the special damages pleaded in their petition. Among the special damages claimed were some natural operating losses which plaintiffs had sustained, and which they were directly out of pocket, in attempting to carry on the misrepresented business until the fraud was reasonably discoverable.

It is true that there appears to be no reported fraud case in which special dam-

ages actually have been recovered in the Nebraska Supreme Court. And it can perhaps also be said that there is no direct intimation in the Court's statement of the general-damage rule that special damages are recoverable (although it may passingly be observed that, in Smith v. Leu, 110 Neb. 297, 193 N.W. 703, 704, Judge Rose, with his characteristic exactness and studied carefulness in expression, speaks of the difference between the actual and represented values of the property as being "generally" the measure of damages for fraud in such a case). On the other hand, there is nothing in the Nebraska cases to indicate that the question of special damages from fraud ever has been directly in the Court's mind, in its statement of the general-damage rule. The situation seems simply to be that the Court never has been called upon to give direct consideration to the question.

In two cases perhaps, the question might have been discussed, but no relevant expression was made. Thus, in Ralston Purina Co. v. Cox, 141 Neb. 432, 3 N.W.2d 748, the trial court had allowed the defendant, on his cross-petition, to recover special damages for fraud in the sale of some hog feed, but the Supreme Court, without commenting on that question, reversed the judgment on the basic ground that the evidence was not sufficient to establish the alleged fraud. And in Sherrill v. Coad, 92 Neb. 406, 138 N.W. 567, 568, where plaintiffs had recovered a judgment for the amount paid for a stallion purchased for breeding purposes, and for the sum claimed for his care, keep, and handling during the season following his purchase, the Supreme Court, in reversing, held that the recovery could not be sustained as one in rescission because plaintiffs had not offered to return the stallion, and that it could not be sustained as one in breach of warranty or fraud, because the amount paid for the horse could not properly be used to measure the damages. As to the claim for care, keep, and handling of the stallion,[5] the Court made the comment, "which it may be conceded was necessary to demonstrate whether or not he was as warranted", and then, without referring directly to the question of breach of warranty or fraud, obscurely declared that plaintiffs had not brought themselves within the rule as to rescission "by claiming a rescission and offering to restore the horse." [6]

Defendant seeks to read into the Sherrill case, from its statement of the general-damage rule and its failure to declare, when a special-damage claim was being asserted, that such damages might be recoverable in a fraud action, that the Court meant to hold that the right to general damages for fraud was exclusive. But if such an intention is to be implied in the case as to fraud, then it must equally, it seems to us, be implied as to breach of warranty, for the language used by the Court is expressly applicable to both. The opinion says, 92 Neb. at pages 410, 411, 138 N.W. at page 568, quoting from the syllabus in Young v. Filley, 19 Neb. 543, 26 N.W. 256: "In an action for damages for a breach of warranty or fraudulent representations as to the quality of personal property sold, where there is no rescission of the contract, the measure of damages is the difference between the value of the property as it actually was and what would have been its value had it been as represented at the time the representation or warranty was made."

It has never, however, been the rule in Nebraska, either before Young v. Filley or since, that only general damages could be recovered for breach of warranty, but the right to recover proximate special damages has always been recognized. See Aultman v. Stout, 15 Neb. 586, 19 N.W. 464; Long v. Clapp, 15 Neb. 417, 19 N.W. 467; Burr v. Redhead, Norton, Lathrop Co., 52 Neb. 617, 72 N.W. 1058; Punteney-

[5] Incidentally, it is difficult to see how the usual expenses of keeping and caring for a horse could at all be claimed to constitute proximate special damages in the case, in view of the fact that the opinion states that the stallion clearly was not worthless, even though he was not suitable for breeding purposes, and that he was usable and had been used by plaintiffs for other purposes. Except insofar as the expenses claimed were peculiarly incident and necessary to the care and keep of a breeding stallion, they would not seem to be at all capable of constituting special damages occasioned by the fraud.

[6] In another case, Cantrell v. Owen, 144 Neb. —, 13 N.W.2d 408, special damages were sought to be recovered for fraud, which the trial court submitted to the jury, but there was a verdict for the defendant, so that the question of the right to recover special damages was not involved in the appeal to the Supreme Court.

Mitchell Mfg. Co. v. T. G. Northwall Co., 66 Neb. 5, 91 N.W. 863; and compare also Neb.Comp.St.1929, § 69-469(6) and (7), Uniform Sales Act § 69(6) and (7). It is manifest therefore that the Court's expression in the Young and Sherrill cases, as to the measure of recovery for breach of warranty, was and could only have been intended to be a statement of the general-damage rule, without any relationship to or implication on the question of special damages. Equally, it seems to us, must the expression and its repetition in subsequent Nebraska cases also be regarded as a mere statement of the general-damage rule in fraud, without any relationship to or implication on the question of special damages.

This view is further logically supported by the fact that the elements of an action for fraud and one for breach of warranty are virtually identical in Nebraska, where scienter is unnecessary to a fraud recovery. See Johnson v. Gulick, 46 Neb. 817, 65 N.W. 883, 50 Am.St.Rep. 629; McCready v. Phillips, 56 Neb. 446, 76 N.W. 885, 887; Paul v. Cameron, 127 Neb. 510, 256 N.W. 11. Indeed, such is the lack of substantive distinction between the two that charges of both fraud and breach of warranty are not infrequently intermingled in the allegations of a petition. Thus, in Young v. Filley, 19 Neb. 543, 26 N.W. 256, the Court treated the petition as charging both a fraud and a breach of warranty. Again, in Sherrill v. Coad, 92 Neb. 406, 138 N.W. 567, the Court similarly declared that the damage rule to which plaintiffs' proof was required to be related was applicable to either theory of recovery. And, in Cantrell v. Owen, 144 Neb. ——, 13 N.W.2d 408, the opinion shows that the jury had been instructed by the trial court on both fraud and breach of warranty in relation to the single recovery right. So, too, in Ralston Purina Co. v. Novak, 8 Cir., 111 F.2d 631, which arose from the District of Nebraska, the cause of action was dealt with by this Court as one for fraud or breach of warranty.[7]

In the face of these considerations, a declaration here that recovery in fraud is limited to general damages only, when recovery in breach of warranty is not, would be drawing an artificial and arbi-trary distinction, which substance and code spirit do not seem to us to warrant, and which the Nebraska Supreme Court cannot specifically be said to have held to exist. Cf. Williston on Sales, 2d Ed., §§ 197, 613, 613a, 614, 614a.

Another reason which moves us to believe that the Nebraska Supreme Court's statement of the general-damage rule, without any specific expression on the question of special damages, is not to be implied as intended to mean that special damages can never be recovered for fraud is the fact that it is the general rule in other jurisdictions that a defrauded party is not limited to general damages, but may also recover special damages which have proximately resulted from the fraud. 37 C.J.S., Fraud, § 141; 24 Am.Jur., Fraud and Deceit, § 218; Restatement, Torts, § 549 and Comment d thereunder; Sedgwick, Measure of Damages, 9th Ed., § 441. Unless the fictional theory is to be adopted that a seller's fraud has run its course and exhausted its effect at the time the deal is closed—when in many instances it actually and plainly has not—there necessarily will be cases of proximate special damages which simple justice demands that the wrongdoer and not the innocent purchaser should be required to bear.· One rather patent example will suffice. If a cattle-raiser by fraudulent concealment or misrepresentation had been induced to purchase some animals that were diseased, with the result that not only the purchased animals but his own previous herd had died, reason and general concept of legal purpose and functioning would certainly regard it as a travesty for a court to hold that the purchaser was merely entitled to recover general damages for the represented value of the purchased animals and that he could not recover special damages for the death of his own herd which had proximately resulted from the fraud. We find nothing in the Nebraska cases that persuades that the Supreme Court of the State would make any such arbitrary holding, if the special-damage question ever specifically arose before it for decision.

For the reasons which have been set out, we think the trial court erred in holding that special damages cannot be recovered for fraud in Nebraska, and in de-

---

[7] In that case it should also be noted that we affirmed a judgment for both general and special damages, thus impliedly at least recognizing the right to recover special damages in fraud as well as in breach of warranty under Nebraska law.

426

nying plaintiffs the opportunity to make proof of any proximate special damages that may have resulted from the fraud.

How far plaintiffs actually may be able to establish the items of special damages alleged in their petition as being natural and proximate losses from the fraud is necessarily a matter for the new trial. As the items impress from the face of the petition, it may be casually observed, however, that plaintiffs perhaps will not be able to go farther than to prove the natural operating losses which they would and did sustain, until the fraud was reasonably discoverable, from carrying on the business by the same or equivalent standards as when they took it over and on a similar or comparable basis, which losses it can fairly be said they would not have been out of pocket if the business at the time of the purchase had been making a profit as represented instead of losing money, and which losses also would equally have resulted to defendant or any one else so attempting to operate the business. Without some closer proximity than appears on the face of the petition, the sums spent in incorporating the business, or in increased rent from changing the location of the offices and the wholesale plant, or in opening up and operating a new retail store, would seem to have only a remote relationship to the fraud itself and to be nothing more than the usual entrepreneur's risks, methods, and choices.

### III.

■ Defendant has argued that, apart from the questions discussed above, the judgment nevertheless can and should be affirmed on the ground that the cause of action is barred by the statute of limitations, Neb.Comp.St.1929, § 20-207. On the theory on which the trial court disposed of the case, it was, of course, unnecessary for it to pass specifically upon this question.

Without considering the general factual shadows which otherwise would exist in the situation, there is one element which seems to us definitely to remove plaintiffs' cause of action from the possibility of any bar under the statute.

Plaintiffs had previously attempted to sue upon the cause of action here involved before the possibility of any bar under the statute was or·could have been claimed to exist. Defendant had immediately removed the case to federal court, where it sought to have the action dismissed on the

ground that it had ceased to do business in the State and that, under Schwabe v. American Rural Credits Ass'n, 104 Neb. 46, 175 N.W. 673, it was therefore not amenable to process by service upon the State Auditor under Neb.Comp.St.1929, § 24-1201. On the basis of the Schwabe case, we held in that suit that the trial court's dismissal of plaintiffs' action was required to be affirmed. See Yoder v. Nu-Enamel Corporation, 8 Cir., 117 F.2d 488.

The effect of our decision was to leave plaintiffs where it was impossible for them to assert their right of action for the fraud damages in Nebraska, so long as the Schwabe case stood untouched by the Nebraska Supreme Court. They could not keep their suit in the state court, where they could have attempted to get the Supreme Court to overrule the Schwabe case. While the Schwabe case stood, any attempt to institute another suit would in effect have been a defiant and futile disregard of our previous adjudication, for it would only have resulted in another removal to the federal court (as defendant did in both the previous and the present suit) and another summary pushing of the action out of court, with perhaps other legal consequences for subsequently repeated attempts. Plaintiffs recognized that the doors of the courts were thus actually closed to the maintenance of any further suit upon their fraud rights, unless they could find some way of getting the Nebraska Supreme Court to overrule the Schwabe case. They undertook to do so by instituting suit against defendant in the state court on another matter involving less than $3,000, and the Supreme Court in that litigation did overrule the Schwabe case and opened up the way for the institution of another action upon their fraud rights, notwithstanding its removal to the federal court. See Yoder v. Nu-Enamel Corporation, 140 Neb. 585, 300 N.W. 840.

We think that, from the time of our decision in 117 F.2d 488, until the decision of the Nebraska Supreme Court in 140 Neb. 585, 300 N.W. 840, plaintiffs actually were deprived of the opportunity to exercise their legal remedy for the fraud, by the force and effect of our specific adjudication against them, in the light of defendant's undeniable intent not to allow them to stay in the state court. We are of the opinion also that under the circumstances of the situation, including plaintiffs' lack of acquiescence in the status created by our judgment, as demonstrated by their

efforts to have the Nebraska Supreme Court overrule the Schwabe case and so lift the barrier of our adjudication against them, the Nebraska statute of limitations would not be regarded by the courts of that State as having run against their fraud rights during this period.

The Nebraska Supreme Court has said that the reason for applying the general statute of limitations of that State does not exist "whenever the ability to resort to the courts has been taken away." Lincoln Joint Stock Land Bank v. Barnes, 143 Neb. 58, 8 N.W.2d 545, 551. It appears to be the general rule, either by statute or by judicial decision, that, while a party is prevented from enforcing a legal right by some paramount authority, the statute of limitations ordinarily is not treated as running against the right. 34 Am.Jur., Limitation of Actions, § 187. The term "paramount authority" in this use, as applied to a judicial act, generally has a broader meaning than merely a decree of formal injunction. Nebraska recognizes that the judicial hand may in other ways so specifically touch and effectually block the enforcement of a party's rights during a particular period as to require that the statute of limitations shall not run during that time. Cf. Macke v. Jungels, 102 Neb. 123, 166 N.W. 191, 192, L.R.A.1918C, 121.

Defendant has argued that the fact that the Nebraska Supreme Court changed its interpretation of section 24-1201, Neb. Comp.St.1929, by overruling the Schwabe case, cannot soundly be permitted to operate as a general tolling of the statute of limitations. But we are not here recognizing the general holding in the Schwabe case as having suspended the operation of the statute of limitations, nor its subsequent overruling as having lifted any apparent repose. The Schwabe decision was not of itself a specific touching by the judicial hand of plaintiffs' rights. Our decision against plaintiffs, however, in 117 F.2d 488, in relation to the same legal rights that are here involved, was a specific touching of those rights and one that in the circumstances of the situation effectually blocked and prevented any further institution of plaintiffs' fraud action from the time of the judgment. It is this adjudication and its direct effect, and not the Schwabe case, that is being treated as having stopped the running of the statute of limitations, and

particularly so, as we have suggested, in the light of plaintiffs' indisputable lack of acquiescence in and acceptance of the status created by our judgment, as demonstrated by their efforts to have the Nebraska Supreme Court overrule the Schwabe case and so lift the barrier of our adjudication against them.

## IV.

Defendant also has argued that the trial court erred in admitting some audits of the books and records of the business, to show that it had not been making a profit as represented, when the books and records themselves were not offered in evidence or even present in the court room, and that without these audits the evidence of fraud would have been insufficient to constitute a submissible case.

The printed record is in narrative form and the evidence as to the audits is only sketchily set out, but some of the audits at least appear to have been prepared during the time that defendant was operating the business, by defendant's own auditor, and for defendant's own use and purposes. Part of the period covered was prior to the time that defendant had actually taken over the business, but the business itself seems to have been treated and operated by defendant as a continuing unit, with the books and records taken over as part of the general set-up, so that the audit was in effect one of the business itself.

The Nebraska Supreme Court has held that audits which a party has himself had made of the books and records of his business and which he has accepted and acted upon as being correct are competent as admissions against interest. Rewick v. Dierks Lumber & Coal Co., 109 Neb. 300, 190 N.W. 875, 876.

The record, as we have indicated, is not entirely clear on some of the aspects of the audit evidence, but at the same time neither does it demonstrate that all of the audits were incompetent, and it does not entitle us to affirm the judgment on the ground that there was no submissible proof on any of the charges of fraud, as defendant contends.

## V.

For the error in the trial court's holding on the question of special damages, the judgment is reversed and the case is remanded for a new trial.