## A. W. McCready v. Thomas L. Phillips.

FILED OCTOBER 20, 1898. No. 9725.

1. **Deceit: Sales.** Deceit, to ground a recovery, must relate to existing facts; but if one buy property on credit, with the intention at the time of not paying therefor, he is guilty of actionable fraud.

2. ———: ———: **Promise to Pay: False Representations.** In such case the fraud does not consist in the unfulfilled promise to pay. That is only the false token whereby the fraud is accomplished. The gist of the fraud is in the expressed or implied false representation of the intention to pay.

3. ———: **Instructions: Evidence.** Certain instructions and rulings on evidence examined, and *held* to be free from prejudicial error.

4. **Vendor and Vendee: Fraud of Vendee: Damages.** In an action for damages by a vendor of land for fraud practiced by the vendee, the evidence establishing that the fraud did not induce the plaintiff to part with his land for less than he was willing to take uninfluenced by the fraud, but consisted in inducing him to sell at an acceptable price, the vendee intending to evade payment, *held*, that the measure of damages is the price agreed upon less what the vendor may have received, and not the value of the land less such receipts.

5. **Deceit: Action for Damages: Ratification of Contract.** An action for damages for deceit inducing a contract ratifies the contract, and the defendant may set off against the damages awarded plaintiff any sums due defendant growing out of the transaction and accruing under the contract.

6. **Conflict of Laws: Foreign Note: Usury.** Notes made and payable in another state and stipulating for a higher rate of interest than is here lawful will be enforced according to their terms in the absence of a plea of usury.

ERROR from the district court of Lancaster county. Tried below before HALL, J. *Affirmed upon filing of remittitur.*

*A. G. Greenlee,* for plaintiff in error.

*Tibbets Bros., Morey & Ferris* and *C. T. Jenkins,* contra.

IRVINE, C.

This case was before the court at a former term, and a judgment for the plaintiff was then reversed for error in the instructions and insufficiency of the evidence to sustain a recovery under the allegations of the petition. (*McCready v. Phillips*, 44 Neb. 790.) After the case had been remanded to the district court amended pleadings were filed. A trial was had on the issues so presented, and there was a verdict and judgment for the plaintiff for $6,000. The defendant again prosecutes proceedings in error.

The amended petition is framed on an entirely different theory than the original, and the case is now presented in an entirely different aspect. The original petition in one count charged a conversion of certain chattels; in another it sought recovery for false representations, inducing plaintiff to sell a farm to defendant. The amended petition is in a single count, and while it pleads all the facts contained in the original, it pleads additional matter, and all as stating a scheme of deception whereby plaintiff was defrauded. In brief, it charges that defendant sold plaintiff certain chattels and agreed to rent him a farm in Dakota; that by reason of the false representations alleged in the former petition plaintiff was induced to make absolute a conveyance of a farm in Seward county, Nebraska, which he had conveyed to defendant as security for the purchase price of the chattels; that defendant refused to rent to plaintiff the Dakota farm, and kept and converted to his own use the chattels, and that all of said acts were performed with the fraudulent design and intent on part of defendant of cheating plaintiff, and of not performing his contract. The answer denies all charges of fraud, pleads the contracts in some detail, and demands judgment on certain notes resulting from the transactions.

It is first argued that the verdict is not sustained by the evidence. While the argument on this topic is sub-

divided, it will be most convenient to treat it as a single assignment. It is not contended that there was no evidence tending to show false representations, but rather that such as might have been false were not material and worked no damage. We think the argument on this point disregards the theory on which the amended petition is drawn. For its proper consideration a statement of the facts is necessary. Phillips was the owner of a farm in Seward county containing 320 acres and valued by different witnesses at from $4,000 to $9,600. It was incumbered by mortgages amounting to almost $3,000. A judgment of about $500 had been rendered against Phillips and others in Lancaster county, and by means of a transcript had become a lien on the farm. The land was occupied by a tenant, Phillips and his family residing in Lincoln. On most points relating to the transactions in controversy the evidence is sharply conflicting. We shall state as facts the evidence tending to support plaintiff's claim, which the jury evidently found to be true. Phillips, late in 1886, was in Sioux City, Iowa, apparently selling rights under a patent. One day he met McCready at the post office and the two men fell into conversation. They had never met before and apparently had never heard of one another. As a result of this first conversation Phillips became imbued with the project of engaging in the live-stock business in Dakota, and within a day or two he went with McCready to a place near Madison, in the then territory of Dakota, and contracted to purchase the chattels above referred to, consisting of live stock, grain, and household goods. The purchase price was $3,000, for which Phillips gave six notes of $500 each, payable to the order of one A. L. Burt, for whom McCready claimed to be acting. To secure the notes Phillips executed a chattel mortgage upon the chattels. In the meantime Phillips had told McCready of his owning the farm, and at McCready's instance Phillips executed a deed conveying the farm to Mrs. McCready, as further security to Burt for the notes. This deed was

executed December 2.  McCready at once started for Lincoln, arriving the evening of December 3.  He saw Mrs. Phillips that night and by appointment met her the morning of the 4th, when she executed and acknowledged the deed.  At 2 o'clock that afternoon it was filed for record in Seward county.  Mrs. Phillips disposed of most of her household furniture, and with the remainder and her four children went to Dakota, where the family established itself in a two-room house on a farm occupied by McCready.  Phillips denies that he ever obtained possession, except on behalf of McCready, of the chattels he had bought, but it is quite evident that, while McCready had some use of them, they were under Phillips' dominion until the events in February shortly to be narrated.  About December 23, McCready having returned to Dakota, he represented to Phillips that an execution on the judgment had been levied on the Seward county farm and that it was about to be sold, and that foreclosure proceedings had been begun on the mortgages.  These representations were false.  Having so induced Phillips to believe that his farm was about to be lost, he persuaded Phillips to let his conveyance become absolute by a sale to McCready.  There is a dispute as to the terms.  McCready claims that the price was $4,500; that the incumbrances were computed, and that a balance of $878 being found due Phillips, this was credited on the chattel sale, a novation of which was then effected.  Phillips claims that the price was $6,000; that some of the chattels were then relinquished, the remainder of the debt thereon canceled, and he was to have $878 in cash as he might need it.  Certain it is that a stallion which Phillips had bought was then turned back, reducing the price of the chattels to $2,400; that Phillips executed notes to Mrs. McCready for $1,500, and that it was understood that Phillips was in some way credited $878.  The notes to Burt were not delivered up, but no recovery has been sought on them, and there was at some time written thereon a memorandum indicating that they

were held only as collateral to the new notes. So matters went until February 23. Phillips then found that the farm he expected had been leased to another and he determined to return to Nebraska. McCready says he simply became discouraged. Discouragement is not surprising under all the circumstances, as he seems to have become involved in debt to McCready $502 additional in the interval. McCready and Phillips had another settlement, when it was agreed that certain things should be done permitting Phillips and his family to get away. The following day they all drove to Madison, where, shortly before the time for the train to leave, they entered a bank, McCready advanced to Phillips $100 to pay his traveling expenses, and Phillips again relapsed into his habit of signing documents presented by McCready. Among those then signed was a note for $602 and a power of attorney. The note represented money lent and the price of feed furnished by McCready. The power of attorney is a remarkable instrument. It is executed by both Phillips and wife and authorizes McCready to sell the chattels and from the proceeds pay the notes for $1,500, the note for $602, the expense of keeping the chattels, and a commission to McCready for selling them. Then McCready was to send "whatever is left" to Phillips at Omaha. It also contains a stipulation for a deficiency judgment against Phillips for anything within the above category which might not be realized, and closes as follows: "And whatever said A. W. McCready does with said chattels, we are to find no fault and consider it is the best that he could do under the scarcity of grain and hay and deep snows." The essence of the instrument was, out of abundant caution, repeated in the certificate of acknowledgment. The Phillipses then returned to Nebraska, and active dealings between the parties ceased. In March McCready says he sold the chattels for $1,190, for which he allows credit on the notes for $1,500. He now owns those notes as well as that for $602. February 23, 1887, a deed conveying the Seward county farm

to a stranger was placed on record. This deed bore date January 21. The title appeared of record in the stranger until November 14, 1891, when a deed reconveying it to Mrs. McCready was filed. This deed bore date January 26, 1887.

The recital of these facts demonstrates intense stupidity on one side or consummate villainy on the other. Perhaps the jury found that there was a concurrence of both traits. Inasmuch as the evidence shows that Phillips, before he met McCready, had been willing to accept even less than $6,000 for his farm, the representations as to the condition of the incumbrances could not have been in themselves material, or at least injurious, if he sold for that price; but we think the evidence amply warrants the inference that there was no *bona fide* sale; that at least as early as December 23 McCready had conceived a scheme to manipulate the conveyance and the deal in chattels in such a way as to obtain the farm without paying therefor and without losing the chattels. The false representations complained of in the original petition were not the gist of the fraud; they were merely made to induce Phillips to act hastily, without reflection and without counsel. They admirably served this purpose. The practical result of the affair was that, while in December Phillips owned a farm, incumbered, but leaving in him a valuable equity, in February, with no intervening cause except his dealings with McCready, the latter had his farm, and Phillips not only had nothing, but was largely in debt to McCready for taking his property away from him. Of course this might be the result of foolish bargains, untainted by fraud. But when we consider that the acquaintance began as does the acquaintance of a vendor of gold bricks with his victim; the promptness with which McCready placed the record title of Phillips' farm in his own wife; the whole course of the subsequent transactions; the fact—not before mentioned—that when the Phillipses left, McCready endeavored to induce them to go to St. Joseph or Milwau-

kee among strangers, and not to return to Nebraska; that the record title of the land was for years kept in a stranger while a deed of reconveyance to Mrs. McCready was withheld from record,—the inference is justifiable, if not necessary, that McCready was deliberately preying upon an unsophisticated stranger, that when he got the farm he had no intention of paying therefor, and that the deal in chattels, the notes, and the power of attorney were only for the purpose of giving legal semblance and apparent plausibility to the fraud contemplated. Such a fraud is actionable. Deceit to ground a recovery must relate to existing facts; but if a man buys property on credit with the intention at the time of not paying therefor, his promise to pay is but a false token whereby the fraud is effected. The real fraud is the expressed or implied false representation of his intention to pay. (*Ayres v. French*, 41 Conn. 142; *Dowd v. Tucker*, 41 Conn. 197; *Chicago, T. & M. C. R. Co. v. Titterington*, 84 Tex. 218; *Goodwin v. Horne*, 60 N. H. 485; *Wilson v. Eggleston*, 27 Mich. 257; *Gross v. McKee*, 53 Miss. 536.)

Complaint is made of certain instructions as submitting evidence of misrepresentations and conduct not in issue; but the argument is based on the theory that the gravamen of the action is the misrepresentations as to the condition of the incumbrances. We think the instructions applicable on the theory of the amended petition and of the evidence as we have stated it.

Rulings on the evidence are complained of. Certain of these related to evidence attacking the consideration of the note for $602. This evidence was material as tending to establish the purpose and intent of McCready. So far as it affected the note itself it was withdrawn from the jury by instructions.

Evidence was excluded of conversations, before the representations were made, between McCready and the attorney of the judgment creditor. The only purpose of this was to show that McCready's statements as to the levy of execution were not intentionally false. But in

this state a *scienter* in such cases is unnecessary. (*Johnson v. Gulick*, 46 Neb. 817; *Moore v. Scott*, 47 Neb. 346, and cases cited.) Moreover, the offer was only to show that the attorney had said that unless the judgment was paid within a time named he would cause the land to be sold. The representation charged and proved was that the land had already been levied upon and was about to be sold.

In the cross-examination of plaintiff defendant sought to show that he had previously offered the land for as little as $4,000. This was excluded. It is doubtful whether it was proper cross-examination, but if so, the error was without prejudice. Defendant proved the fact by other witnesses. Plaintiff was called in rebuttal and denied or explained the circumstance, and defendant had then a proper opportunity to cross-examine.

The verdict, we think, was largely excessive. The rule of damages proposed to the jury was the difference between the value of the land and what Phillips received. This was incorrect, under the facts of the case. The fraud did not consist in inducing Phillips to part with the land for less than he would otherwise have done, but in inducing him to part with it at an acceptable price without any intention of paying the consideration agreed upon. Phillips was willing at all times to sell for $6,000, if not for less, and $6,000 was what he thought he was getting. This should be the basis of the calculation. He received a credit of $878 on the chattels and the discharge of the mortgages. These were computed to amount to $2,983.53, and we can find nothing impeaching that calculation. Deducting the sum of these two credits from $6,000, we have $2,138.47 as plaintiff's damage. Interest at seven per cent to December 16, 1896, the date of the verdict, increases this amount to $3,632.13. The verdict should not have been for more. But there is another error. The court allowed the jury to consider the debt to McCready on the notes only in case it found for the defendant. This is not an action to rescind, but one for damages. It ratifies the contract.

McCready v. Phillips.

Plaintiff is entitled to his damages on the basis of a contract performed. He cannot repudiate it in part and have his damages entire. Defendant is now entitled to recover on his notes. On the $1,500 notes $1,190 was paid by the sale of the chattels. The $602 note is wholly unpaid. They are all stipulated to bear interest at the rate of twelve per cent per annum. The law of Dakota, where they were made and payable, is not pleaded or proved, and the presumption of similarity in law would ground a presumption of usury. But usury is not pleaded by the plaintiff. Usury must be pleaded, and with certainty, to be available as a defense. (*New England Mortgage Security Co. v. Sandford,* 16 Neb. 689; *Anglo-American Land, Mortgage & Agency Co. v. Brohman,* 33 Neb. 409; *Rose v. Munford,* 36 Neb. 148; *Rainbolt v. Strang,* 39 Neb. 339; *Bell v. Stowe,* 44 Neb. 210.) We are constrained, therefore, to disregard this feature and allow interest according to the terms of the notes. We credit the payment of $1,190 as of March 1, 1887, there being no evidence of the precise date and that being to take the defendant's testimony most strongly against him. So computed we find due on the notes at the date of verdict $2,273.36. Deducting this from $3,632.13, the maximum of plaintiff's damage, we have $1,358.77 as the highest amount the evidence will sustain.

If the plaintiff within forty days remit $4,641.23, as of the date of the judgment, the judgment will be affirmed for the residue; otherwise it must be reversed.

JUDGMENT ACCORDINGLY.