JOHN J. KUPER, APPELLEE, V. FRANK SNETHEN, APPELLANT.

FILED APRIL 17, 1914. No. 17,571.

Fraud: DAMAGES. In order to sustain an action for fraud and deceit, plaintiff must plead and prove actual damage. Deceit and injury must concur.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Reversed and dismissed.*

*J. H. Broady* and *James E. Leyda,* for appellant.

*Reavis & Reavis, contra.*

FAWCETT, J.

From a judgment of the district court for Richardson county, in favor of plaintiff, in an action for fraud and deceit, defendant appeals.

On October 30, 1905, plaintiff purchased from one Kinsloe the west half of section 7, township 1 north, range 27 west of the 6th P. M., in Red Willow county, in this state, for the agreed sum of "$25 per acre for the actual number

of acres that it will survey out." The land in contro-
versy, being the west half of section 7, makes it the west-
ern boundary of the second row of sections in that town-
ship. As is not unusual in such cases, this half section
is what is termed a long half section. When the contract
was entered into, plaintiff paid down $50, was to pay $950
additional as soon as an abstract was furnished showing
good title in Kinsloe, and $4,000 was to be paid on or be-
fore the 1st day of the following March, the balance to be
settled for by first mortgage. Before the transfer was
made, plaintiff decided that he would pay all cash instead
of giving a mortgage for an unpaid portion of the consid-
eration. This plan seems to have been agreeable to all
parties concerned. Not having sufficient money himself,
he negotiated a loan from the defendant for the balance
needed. At that time both the seller and buyer had the
idea that the half section contained 331.52 acres, which
at the contract price would have amounted to $8,287.50.
Having paid the first thousand dollars, in accordance with
the terms of the contract, there remained due, under the
then supposition of the parties, $7,287.50. This sum plain-
tiff delivered to defendant with which to close the deal.
Defendant took a draft for that amount with him and pro-
ceeded to Danbury, in Red Willow county, where the agent
of Kinsloe resided. A question arose as to the number
of acres actually in the tract. Kinsloe's agent, McDonald,
advised defendant that a survey had been made. This sur-
vey had been made by a surveyor by the name of Hill in
1880. An examination of that survey showed that the half
section contained 378 acres. On that basis the draft which
defendant had taken with him lacked $1,162.50 of being
enough to pay for the acreage which the Hill survey showed
plaintiff would be receiving. Thereupon defendant deliv-
ered the draft, which he had taken with him, to McDon-
ald, wrote plaintiff advising him that there was more land
than they had supposed, and asking him to come to defend-
ant's bank. Plaintiff and his father met defendant at the
bank as requested, and after a conversation, as to the pur-
port of which there is a conflict between the testimony of

defendant and that of plaintiff and his father, plaintiff borrowed from defendant the necessary $1,162.50 for six months, his father signing the note with him as surety. The deed was thereupon delivered, and plaintiff went into possession of the land and is now in possession of the same. The note was promptly paid on the date of its maturity.

Plaintiff now charges that he in fact only received 331.52 acres, and that he was induced to pay the additional $1,162.50 through misrepresentations fraudulently and deceitfully made to him at the interview in defendant's bank, above referred to. Counsel for plaintiff in their brief say: "In fact, if the jury were not able to find from the evidence that the plaintiff had been damaged by the conduct of defendant, of course that would be the end of the case." This admission of counsel correctly recognizes the law governing the present action. Regardless of what the defendant may have said to plaintiff about the survey known as the Hill survey, or in reference to an additional acreage, which induced plaintiff to make payment for such additional acreage, if plaintiff in fact received the amount of land for which he actually paid, then he has not been damaged, and his action must fail. Upon this point we are unable to discover any real conflict in the evidence. The fact as to the number of acres included in the tract, which plaintiff obtained, is to be determined from three surveys: One the Hill survey, made in 1880, the one which McDonald had called to the attention of defendant prior to closing the deal; another made by one Barber a short time prior to the trial in the district court; and the other by one Roland, made on November 30 and December 1 to 7, inclusive, 1910. Before proceeding to give the result of these surveys, it should be stated that the evidence shows that the land was fenced all around, the fence on the east line of the half section having been up, as the witness Dolph states, "since the 80's," and that there is a public road along the north, west and south sides, which roads have been in use for many years. That plaintiff actually received the land within these boundaries is not controverted, nor is the fact that plaintiff has

Kuper v. Snethen.

a good title to the lands within such boundaries disputed. The simple question, therefore, is, how much land has plaintiff obtained by this transaction? The Hill survey shows that the tract described contains 379 and a fraction acres. The Barber survey shows that it contains 388 and a fraction acres. Mr. Roland gives the number of acres as 341.943. The jury returned a verdict in favor of the plaintiff for the difference between 331.52 acres and 378 acres, the number which plaintiff paid for. The trial court, as a condition of overruling defendant's motion for a new trial, required plaintiff to remit the difference between 331.52 acres and the amount of the Roland survey, 341.943.

The question now is, does the Roland survey raise such a conflict in the evidence as to the number of acres contained in this tract as to preclude a reversal of the judgment which plaintiff has obtained? It appears from statements of counsel on both sides that the judgment now appealed from was obtained on the third trial of this action. In all three of these trials the verdict of the jury was in favor of plaintiff. It is significant that the trial court set aside the first two verdicts. It is not shown that those verdicts were set aside on account of any errors of law committed by the court, hence it is a fair inference that the trial court set those verdicts aside because it thought plaintiff was not entitled to them. When the verdict at the last trial was obtained, it is said by counsel that the court stated that, there being some questions of law which it thought the supreme court ought to determine it would overrule the motion, enter judgment upon the verdict, and let the case come to this court for its determination of those questions. If the Roland survey really raised a conflict in the evidence, so that we could say that it was for the jury to determine from the evidence the number of acres which plaintiff had obtained, we would feel it to be our duty to accept the verdict of the jury and proceed to a determination of the legal questions involved; but we cannot so construe the Roland survey. The Roland survey is set out *in extenso* as exhibit O in the bill

of exceptions, and to it is attached a plat made by Mr.
Roland. This plat shows the fences and roads surround-
ing the tract, as above set out; but Mr. Roland did not
follow those lines. Being unable to find all of the section
corners and quarter-section corners, he seems to have taken
the section corner on the western township line, at the
southwest corner of the tract in controversy, and run a line
between that point and the section corner at the southeast
corner of section 12, which would be on the eastern town-
ship line of that township, and then to have gone to the
south line of the township at the southeast corner of sec-
tion 31, and run a line between that point and the section
corner on the north line of the township at the northeast
corner of section 6, and to have made his survey of this
tract by straight lines, thus obtained. This method as-
sumes that the north and south half section line of sec-
tion 7 must necessarily be in line with the corresponding
half section lines in all sections north and south of section
7 in the township; that is, that the north and south half-
section line is part of a continuous straight line through
the township. This arbitrary assumption applies in like
manner to the east and west line on the south line of the
half section. Clearly, no such presumption will justify
changing lines that have been plainly marked by fences
and acquiesced in by all parties interested for more than
20 years. The survey by Roland is therefore worthless,
as against the surveys of Hill and Barber. By their sur-
veys the land conveyed to plaintiff by the deed he received
is the full amount paid for by him. Hence, he has not been
damaged. This being true, he is not entitled to any re-
covery in this action. The case has been tried three times.
We think it is time the litigation should end.

The judgment of the district court is therefore reversed
and plaintiff's action dismissed.

REVERSED AND DISMISSED.