FRED D. BELTNER, APPELLANT, V. CARL H. CARLSON, APPELLEE.

46 N. W. 2d 153

Filed February 13, 1951. No. 32862.

*Neighbors & Danielson,* for appellant.

*Mothersead, Wright & Simmons,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Fred D. Beltner brought this action in the district court for Scotts Bluff County against Carl H. Carlson. The purpose of the action is to recover damages based on fraud. Judgment was rendered dismissing the action with prejudice. Plaintiff filed a motion for new trial and has appealed from the overruling thereof.

For convenience we shall herein refer to the appellant as Beltner and to the appellee as Carlson.

On November 18, 1943, Beltner owned a ranch in Morrill County, Nebraska. As of that date he entered into an agreement with Carlson whereby he leased these premises to Carlson for the period January 1, 1944, to October 31, 1948. This agreement also contained a provision granting to Carlson the right to purchase the premises at any time during the term of the lease. This option Carlson exercised on June 16, 1948.

The agreement, so far as here material, provided that upon Carlson's exercising the right to purchase Beltner would assign to him the school land leases he then

held upon some 440 acres in Section 36, Township 21 North, Range 50 West, of the 6th P. M., in Morrill County, Nebraska, which lands are fully described in the agreement. When, on November 29, 1948, Beltner and Carlson made settlement, pursuant to Carlson's exercise of this option, there were delinquent and unpaid irrigation taxes assessed against these school land leases. The office of county treasurer of Morrill County, as of November 29, 1948, showed these taxes, together with interest and penalties, to be in the total of $13,491.68. In making settlement of the purchase price Beltner allowed Carlson a credit of $6,745.84, or one-half the amount of these delinquent taxes.

On June 7, 1948, Carlson sold the ranch to Clyde A. Linch who will hereafter be referred to as Linch. The terms of their agreement expressly provided that Carlson was not bound to pay these delinquent irrigation assessments.

Carlson admits, or the evidence establishes, that on or about November 29, 1948, he represented to Beltner that as of June 7, 1948, he had entered into a written agreement with Linch whereby he sold the lands and school land leases to Linch and agreed to convey and assign to him the land and school land leases but that Linch refused to perform and disclaimed any obligation to do so until the delinquent irrigation taxes on the school land leases were fully paid; that unless these taxes were paid Carlson would lose the benefit of his bargain with Linch or would be subject to liability for nonpayment thereof; and that Carlson would attempt, by suit, to recover from Beltner any loss sustained by reason of Linch's failure to perform or for any recovery Linch might have against Carlson because of the nonpayment thereof.

Carlson admits these representations were false and, at the time, known by him to be such. This is self-evident from the terms of Carlson's agreement with Linch. Beltner claims he believed these representations and

relied thereon and pursuant to such belief and reliance acted thereon by allowing Carlson a credit of $6,745.84 on the balance due on the purchase price.

The first question presented is, was Beltner legally obligated to pay these delinquent irrigation taxes under the terms of his agreement with Carlson wherein he agreed to assign to Carlson the school land leases? If he was legally obligated to pay them he could not have been defrauded for it has often been stated: "One suffers no damage where he is fraudulently induced to do something which he is under legal obligation to do * * *." 23 Am. Jur., Fraud and Deceit, § 177, p. 996. See, also, 37 C. J. S., Fraud, § 41, p. 292; Kuper v. Snethen, 96 Neb. 34, 146 N. W. 991; Musconetcong Iron Works v. Delaware, L. & W. R. R. Co., 78 N. J. Law 717, 76 A. 971, 20 Ann. Cas. 178; Record v. Rochester Trust Co., 89 N. H. 1, 192 A. 177, 110 A. L. R. 1218; Field v. National City Bank, 343 Mo. 419, 121 S. W. 2d 769; Plews v. Burrage, 19 F. 2d 412.

Section 76-201, R. R. S. 1943, provides: "The term 'real estate,' as used in sections 76-201 to 76-281, shall be construed as coextensive in meaning with 'lands, tenements and hereditaments,' and as embracing all chattels real, except leases for a term not exceeding one year."

We said in Fawn Lake Ranch Co. v. Cumbow, 102 Neb. 288, 167 N. W. 75: "Defendant insists that his lease is a chattel real, and that such instruments or the rights given thereby are personal property, and hence do not constitute a lease of the land or a sale of any part of it. A number of decisions are cited in support of this proposition. In a number of states chattels real are personal property, but in this state the statute has settled the law in that respect. Rev. St. 1913, sec. 6187 (now section 76-201, R. R. S. 1943). Under section 6187 in the chapter of the statute relating to real property, the term 'real estate' is construed 'as coextensive in meaning with lands, tenements and hereditaments and as embracing all chattels real, except leases for a

term not exceeding one year.' * * * Whatever view may be taken in some states with reference to the nature and character of such an instrument * * * the legislative definition prevails, and the property must be considered as real estate."

Consequently the agreement to assign and the subsequent assignment of these school land leases did not subject Beltner to any implied warranties created by statute in the sale or contract to sell personal property. Nor would the authorities cited from other jurisdictions here apply wherein, on the assignment of a lease, warranties are implied that the title is perfect and free from liens and encumbrances on the theory that a lease is personal property.

After a careful study of the authorities we think the following statement taken from 19 A. L. R. 608 correctly reflects our view: "The authorities on the question whether implied covenants of title or possession result from the assignment of a lease are conflicting. The sounder doctrine would seem to be that no such covenants are implied in the assignment of a lease."

As stated in Miles v. United Oil Co., 192 Ky. 542, 234 S. W. 209, 19 A. L. R. 602: "By merely transferring his lease the lessee only places his assignee in the same relationship toward the lessor as was occupied by the lessee, and all warranties and covenants by the lessor (by implication of law or otherwise) are transferred to the assignee by the assignment. Nothing else is implied as against the assignor and if the assignee desires further assurance from the lessee, his assignor, he should exact express covenants for that purpose."

"The assignment transferring the leasehold from Adams to Howard and thence through mesne assignments to the corporation, was no more than a quitclaim." Arnett v. Stephens, 199 Ky. 730, 251 S. W. 947.

See, also, Rawle's on Covenants for Title (5th ed.), § 272, p. 437; 16 R. C. L., Landlord and Tenant, § 342, p. 843; 32 Am. Jur., Landlord and Tenant, § 355, p.

310; Sanborn v. Cree, 3 Colo. 149; Shannon v. Mastin, 135 Mo. App. 50, 114 S. W. 1127; White v. Murphy (Tex. Civ. App.), 229 S. W. 641; Annotation, 19 A. L. R. 608; Schmidt v. St. Lewis, 174 Okl. 1, 49 P. 2d 521; Alford v. Cobb (N. Y.), 35 Hun. 651; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S. W. 2d 1039, 60 A. L. R. 890; Blair & Gantt v. Rankin, 11 Mo. 440; Waldo v. Hall, 14 Mass. 486.

Under the law applicable thereto we find that the assignment of these school land leases by Beltner to Carlson, in the manner as provided by the lease agreement, did not obligate Beltner to pay these taxes and an examination of the lease agreement as a whole does not disclose that the parties intended otherwise. See section 76-205, R. R. S. 1943.

Any claim or contention that Beltner was or was not obligated to pay these irrigation taxes, under his agreement to assign these school land leases, was not actionable for such were representations relating solely to matters of law.

"The general rule is well settled that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law. * * * The reasons generally advanced as the basis of the rule that fraud cannot be predicated upon misrepresentations as to matters of law are that everyone is presumed to know the law, both civil and criminal, and is bound to take notice of it. Hence, one has no right to rely on such representations or opinions and will not be permitted to say that he was misled by them." 23 Am. Jur., Fraud and Deceit, § 45, p. 809.

"As a general rule, a misrepresentation which involves a statement of matters of law is one upon which a party cannot rely, as all parties are bound to know the law." Wood v. Roeder, 50 Neb. 476, 70 N. W. 21.

See, also, Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203; 37 C. J. S., Fraud, § 55, p. 323.

The more serious question relates itself to the admit-

tedly false representations made by Carlson to Beltner in regard to Carlson's sale of the land and school land leases to a third person who Carlson represented refused to perform and disclaimed any obligation to perform until the delinquent irrigation taxes on the school land leases were fully paid and that, unless the delinquent irrigation taxes were paid, he (Carlson) would lose the benefit of such agreement or would be subject to liability for nonpayment thereof.

We have said: "To maintain an action for fraudulent representations, it is not only necessary to establish the telling of the untruth, knowing it to be such, or that it was told without knowledge of the facts, but also to prove that the plaintiff had a right to rely upon it, and did so rely, and altered his condition because thereof, and suffered damages thereby." Dyck v. Snygg, 138 Neb. 121, 292 N. W. 119.

Assuming these misrepresentations, which were admittedly made, were material, it is evident from Beltner's testimony that he did not rely and act thereon.

On November 29, 1948, Beltner and Carlson met in the office of Beltner's counsel to attempt to make a settlement. At that time Carlson, in addition to what has already been set forth, told Beltner he would attempt to recover from him either any loss he might sustain by reason of the failure of his purchaser to perform because these taxes were not paid or for any amount he might have to pay as a result of their nonpayment and would bring suit against him for that purpose if settlement could not be made between them to pay these taxes on a fifty-fifty basis. Admittedly Carlson had no intention of bringing such a suit as he had no basis therefor. Relying thereon Beltner made settlement and allowed a credit on the purchase price of an amount equal to one-half of the total of the delinquent taxes, or $6,745.84, in order to prevent being sued and tying himself up so he could not go south for the winter, his doctor having advised it was best for his health to do so.

"It is a general rule that fraud must relate to a present or preexisting fact, and cannot ordinarily be predicated on unfulfilled promises, or statements as to future events. See Palmetto Bank & Trust Co. v. Grimsley, 134 S. Car. 493, 133 S. E. 437, 51 A. L. R. 42, and notes." Theno v. National Assurance Corporation, 133 Neb. 618, 276 N. W. 375.

"One of the essential elements of fraud practiced by means of false representations is that the representation, must be concerning a matter material to the contract." McNeny v. Campbell, 81 Neb. 754, 116 N. W. 671.

"It is elementary law that actionable fraud must in some manner pertain to matters material to the transaction involved. The representations relied upon at most relate to matters of collateral inducement only, and which of themselves afford no ground for the rescission of the contracts of subscription." American Building & Loan Assn. v. Bear, 48 Neb. 455, 67 N. W. 500.

However, this court has held that if the advantage was obtained by fraudulent promises in the nature of the assertion of facts which there was no intention to perform, that is, where the representation is that of a fact in the future and not a mere promise, and it is relied upon and turns out to be false, the remedies of the original party are the same as where fraudulent misrepresentations are made in regard to existing facts.

We have held actionable: Where there was a promise to convey a house and lot and furnish money as needed, Abbott v. Abbott, 18 Neb. 503, 26 N. W. 361; where a party bought property on credit with the intention at the time of not paying therefor, McCready v. Phillips, 56 Neb. 446, 76 N. W. 885; where the wife obtained the legal title to property of her husband on her promise to carry out his intentions with respect thereto, Pollard v. McKenney, 69 Neb. 742, 96 N. W. 679; where the mortgagee obtained his chattel mortgage by agreeing to bid a certain amount at the subsequent sale thereof for the property upon which he obtained his security, Cerny

v. Paxton & Gallagher, 78 Neb. 134, 110 N. W. 882, 10 L. R. A. N. S. 640; and where a loan was obtained on the promise that the proceeds would be used for a definite purpose, Federal Finance Co. v. Cass, 120 Neb. 834, 235 N. W. 579.

We think the representations by Carlson that he was obligated to pay these taxes under his agreement with Linch, or of the possibility of his losing the benefit of the contract if he failed to do so, are in no way material to the question of Beltner's liability for these taxes under his contract with Carlson. Nor do we find his threat to sue Beltner to be such an assertion of fact in the future as to be actionable under our holdings. No cases are cited that so hold.

In view of the foregoing we affirm the judgment of the trial court.

AFFIRMED.