**Douglass R. SHORTRIDGE, Special Administrator of the Estate of William M. Platis, deceased, and Dorthey Platis, Plaintiffs-Appellants,**

v.

**George PLATIS, Nick J. Thiros, Wechsler Coffee Corporation and G & F Consulting Corporation, Defendants-Appellees.**

No. 2–383A80.

Court of Appeals of Indiana, Third District.

Jan. 12, 1984.

Rehearing Denied March 5, 1984.

Douglass R. Shortridge, Douglass R. Shortridge, P.C., Indianapolis, for plaintiffs-appellants.

Terrill D. Albright, Steven L. Householder, Baker & Daniels, Indianapolis, for defendants-appellees George Platis and G & F Consulting Corp.

David Capp, Cohen & Thiros, Merrillville, James H. Voyles, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, for defendant-appellee Nick J. Thiros.

Jim A. O'Neal, Robert G. Zeigler, Ice, Miller, Donadio & Ryan, Indianapolis, for defendant-appellee Wechsler Coffee Corp.

HOFFMAN, Judge.

William and George Platis were brothers engaged in the business of coffee roasting and sales. In 1974, the Platis brothers merged their company with the Cambridge Coffee Company, owned by Robert and Richard Richheimer, and formed Metrobridge, Inc. Following consolidation, Richheimer Coffee Company (owned by the Richheimers) owned 71% of the Metrobridge shares, while George and William Platis each owned 14.5%.

The Richheimers and the Platis brothers executed a stockholders' agreement restricting transfer of Metrobridge shares in order to "preserve continuity of management" and "to prevent any of the Stock

from being acquired by a person other than the parties ... or a Permitted Transferee ... [.]" This comprehensive agreement included the following buy/sell clause:

"In the event of the death of either WILLIAM or GEORGE, the survivor of them shall have the right of option, so long as he lives, to make, from time to time, such purchases as such survivor desires, from Permitted Transferees of the decedent, of Stock which was owned by such decedent at the time of his death, each such purchase to be at the same price as is fixed in preceding sub-paragraph (b)(ii) hereof; such purchase price(s) shall be paid in five (5) approximately equal annual instalments the first instalment payable one (1) year from the exercise of such option evidenced by promissory note(s) bearing interest at 7% per annum and collateralized by the Stock purchased[.]"

The following formula was included for the purpose of determining the purchase price of stock in the event that the option to purchase was exercised:

"The book value of such Stock, so proposed to be sold, as of the date of the close of the immediately preceding fiscal year of CORPORATION unless subsequent thereto an audit report of CORPORATION shall have been prepared by a Certified Public Accountant for a portion of the CORPORATION'S current fiscal year, which book value shall be conclusively determined by the audit report for the respective period aforementioned after deducting therefrom any valuation of good will plus that sum, as and for the proportionate share of the good will of CORPORATION, as is allocable to the Stock proposed to be sold. The total good will value shall be conclusively deemed to be equal to three (3) times the net earnings of CORPORATION averaged over its three (3) immediately preceding fiscal years."

On April 28, 1978, William Platis suffered a massive heart attack and died. George Platis sent notice of his intent to exercise the option to purchase William's stock on June 8, 1978. William's widow, Dorthey Platis, objected to the sale due to a dispute over the valuation of the stock. Based on her objections, the executor of William's estate, Nick Thiros, delayed the sale.

In response, George Platis filed suit against Thiros seeking specific performance of the stockholders' agreement. Several different estimates were made using the formula contained in the agreement, the highest being for $138,000. Instead of pursuing further court intervention in this matter, the parties struck a settlement agreement on November 7, 1978. Dorthey Platis agreed to a sale of stock for $140,000 cash, and the George Platis suit was dismissed with prejudice.

Early in 1979, George Platis sold his interest in Metrobridge to Wechsler Coffee Corporation for approximately $720,000 and entered into an employment contract with Wechsler in the amount of $200,000.

On March 18, 1980, Douglass Shortridge, acting as Special Administrator for the Estate of William Platis, filed suit against George Platis. Shortridge amended his complaint on March 16, 1982 and joined Nick Thiros, Wechsler Coffee Corporation, and G & F Consulting Corporation as parties defendant. Essentially, Shortridge claimed that defendants had either jointly or severally worked to assure the fraudulent conveyance of William Platis' stock at a depreciated value to George Platis. Summary judgment was granted in favor of all defendants, from which appellants Dorthey Platis and Douglass Shortridge now appeal.

It should first be noted that "[t]he standard of review applied by the courts of appeal is the same as that of the lower courts; summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Matter of Estate of Belanger,* (1982) Ind.App., 433 N.E.2d 39, at 42; *Enderle v. Sharman,* (1981) Ind.App., 422 N.E.2d 686. As stated in *Aetna Ins. Co., etc. v. Monteith Tire Co.,* (1983) Ind.App., 443 N.E.2d 880, at 881:

"Summary judgment is not a procedure for trying facts and determining the preponderance of the evidence, but rather it is a procedure for applying the law to the facts when no factual controversy exists. *Central Realty, Inc. v. Hillman's Equip., Inc.* (1969), 253 Ind. 48, 246 N.E.2d 383. The standard of review applied by courts of appeal is the same as that of trial courts; summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *F.W. Means & Co. v. Carstens* (1981), Ind.App., 428 N.E.2d 251."

Appellants first contend that the trial court erred in granting summary judgment due to the existence of a material issue of fact on their claim of constructive fraud. Appellants' amended complaint and affidavits in opposition to defendants' motions for summary judgment allege that defendants materially misrepresented their intentions to Dorthey Platis in order to purchase her stock under the buy/sell agreement formula. This formula led to a valuation of the stock representing only one third of its market value.

■ Appellants' allegation of fraud under the facts and circumstances set forth in the record does not present a material issue of fact to be resolved at trial. The buy/sell agreement originally executed represents a valid contract, which is entitled to enforcement in a court of law. In effect, the Platis brothers agreed that should one of them die, the survivor would have the option to purchase stock based on a predetermined formula. A similar buy/sell agreement was enforced by this Court in *Stech v. Panel Mart, Inc.*, (1982) Ind.App., 434 N.E.2d 97. The *Stech* court specifically held that:

"A contract may be declared unenforceable due to unconscionability when there is a gross disparity in bargaining power which leads the party with the lesser power to sign a contract unwillingly or unaware of its terms. Additionally, the contract must be one that no sensible person, not under delusion, duress or in distress would make, and such as no honest and fair person would accept. *Dan Purvis Drugs, Inc. v. Aetna Life Ins.* (1980), Ind.App., 412 N.E.2d 129 citing *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 276 N.E.2d 144. Rosella [appellant] has failed to show a great disparity in bargaining power. In effect, each shareholder was wagering that one of the other shareholders, or their spouses, would be the first to die. The mere fact that Rosella lost her wager does not make the Stock Purchase Agreement unconscionable. The trial court therefore did not err in failing to find the Stock Purchase Agreement unconscionable." 434 N.E.2d at 103.

In the case at bar, George had the *absolute* right to purchase William's stock at any time for the amount of money calculated under the formula. The highest estimate contained in the record was $138,000, to be paid in equal installments over five years. Instead, George paid William's estate $140,000 cash.

■ Regardless of defendants' representations to Dorthey Platis, constructive fraud is not at issue in this case. George Platis exercised a contractual right to purchase the stock, and Dorthey Platis was obligated to transfer these shares. There can be no recovery in fraud for a deception by which a person is induced to do something which he is already bound to do. *M.B. Kahn Const. Co., Inc. v. S.C. Nat. Bank* (1980), 275 S.C. 381, 271 S.E.2d 414, 415; *Berry v. Robotka* (1969), 9 Ariz.App. 461, 453 P.2d 972, 979; *Ellis v. Crockett*, (1969) 51 Haw. 45, 451 P.2d 814, 820; *Miller v. Tietz Construction Company*, (1955) 46 Wash.2d 180, 279 P.2d 641, 642–43; *Beltner v. Carlson*, (1951) 153 Neb. 797, 46 N.W.2d 153, 155; 37 C.J.S. Fraud § 41(c).

Assuming the truth of appellants' allegations, at worst Dorthey Platis was "deceived" into performing a contract entered into between her husband and George Platis. The facts do not indicate that she relied to her detriment, or that she has sustained any injury compensable by law.

Her claims of fraud, constructive fraud, abuse of a confidential relationship, equitable estoppel and waiver are therefore without merit.

Appellants also contend that a fraud was perpetrated based on the following section of the 1974 shareholders' agreement:

"provided, however, that if any Permitted Transferee of such decedent desires to sell any Stock owned by him and obtains a written bona fide offer for the purchase thereof, then such Permitted Transferee shall give notice to all the other Stockholders of such desire to sell, which notice shall be accompanied by a true copy of such bona fide offer. For the sixty (60) days following the giving of such notice, the survivor of WILLIAM and GEORGE shall have the option to purchase the Stock, so proposed to be sold upon the same terms and conditions as are set forth in subparagraphs (a) to (d), both inclusive, of this ARTICLE III and if such survivor fails to exercise such option within such sixty (60) day period, then the other Stockholders shall have the right to purchase, proportionately, such Stock so offered for sale, upon the conditions set forth in sub-paragraphs (a) to (d) of this ARTICLE III."

"(b) The price at which the Stock so proposed to be sold may be purchased shall be

(i) The price stated in the bona fide offer therefor which was attached to the notice of proposed sale if there was such an offer, or if none ... [.]"

■ Appellants claim that appellees purposely concealed the sale of Metrobridge to Wechsler in order to prevent Dorthey Platis from selling her stock under these provisions, for which she may have received its market value. However, Mrs. Platis' deposition indicates that she knew what George Platis was doing well before he received William's stock.

"Q  I want to return one more time to the May 19 meeting. The important thing that you told me was that George assured you that you would be put in the same position that you would have been in if William was still alive. After that meeting and up until November 7 when you signed an agreement to sell the stock, was there ever anything that you did which you would not have done if George hadn't made that assurance? Did you act differently because he made that assurance to you?

"A  I realized before November that he didn't really intend to do that.

"Q  When did you first realize that he didn't intend to do that?

"A  When he kept insisting on buying the stock....

\*  \*  \*  \*  \*  \*

"Q  Did you realize at that point that he did not intend to put you in exactly the same position you would have been in?

"A  No, I didn't know it at that time, because I felt like he was going to buy it from me or just take possession of it from me, sell it to Wechsler, and then whatever moneys he received, he would just share that with me.

I knew that it was a technical thing. He had to have those shares in order to sell them.

"Q  But did you subsequently discover from your conversations with George in July or August that that wasn't the case?

"A  Oh, yes, definitely."

This testimony indicates that Dorthey Platis did not rely on any misrepresentations made by George Platis, nor was she ignorant of what was actually transpiring.

" 'When the person who claims to have been defrauded solemnly states under oath that he did not believe the alleged false representations, the inevitable conclusion must be that he was not deceived thereby. There is no other field of in-

quiry for a court to explore under such circumstances.' " *McClellan v. Tobin,* (1942) 219 Ind. 563, at 571, 39 N.E.2d 772, at 775.

■ Appellants next argue that the buy/sell provisions of the shareholders' agreement are ambiguous and entitled to resolution through trial. The law in Indiana requires that where a written contract is ambiguous, the particular ambiguity should be selected and submitted to the jury under proper instructions. *Wilson, Admx. v. Kauffman et al.,* (1973) 156 Ind. App. 307, 296 N.E.2d 432. In determining whether or not a contract ambiguity exists, this Court recently held that:

"[i]n interpreting or construing a contract it is the court's purpose to give effect to the intent of the parties. 6 I.L.E. *Contracts* § 113 at 163 (1958). Such intent is established, however, as of the time the contract was made and as reflected by the language used. *Shahan v. Brinegar,* (1979) Ind.App., 390 N.E.2d 1036, 1041.... While interpretation and construction of ... [a contract] is a function of the trial court, such court must respect the plain meaning of terms used and not create an ambiguity where none exists. *Crawford v. Ranger Insurance Co.,* (9th Cir.1981) 653 F.2d 1248, 1250. Moreover, the court may not rewrite an agreement for the parties, *Taylor v. American Underwriters, Inc.,* (1976) 170 Ind.App. 148, 152, 352 N.E.2d 86, 89, or torture language to create an ambiguity. *Crawford v. Ranger,* 653 F.2d at 1258. Ambiguity is not established by the mere existence of a controversy as to the meaning of certain ... [contract] provisions. *Vernon Fire & Casualty Ins. Co. v. American Underwriters, Inc.,* (1976) 171 Ind.App. 309, 356 N.E.2d 693, 696. Language in a written agreement will be considered ambiguous only when reasonably intelligent persons upon reading it would honestly differ as to its meaning. *English Coal Co. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, 308...." *Lov-*

*ing v. Ponderosa Systems, Inc.,* (1983) Ind.App., 444 N.E.2d 896, at 903–904.

■ The provisions in the case at bar are clear and unambiguous. Appellants seem to be *alleging* ambiguity due to the *controversy* over the buy/sell agreement in spite of the fact that reasonably intelligent persons would not differ as to its meaning. The trial court did not err in this regard.

Appellants next contend that the trial court erred in failing to specifically state the legal reasons for granting summary judgment in favor of Thiros and Wechsler. The record indicates that summary judgment was granted in favor of George Platis and G & F Consulting Corporation on July 20, 1982. In support of this ruling, the trial court made written findings of fact and conclusions of law. On February 3, 1983, the trial court also granted summary judgment in favor of Wechsler and Nick Thiros without written explanation. Appellants now claim that the trial court erred in failing to make specific written findings.

■ There are compelling reasons for trial courts to set forth in writing the reasons for granting summary judgment. However, trial courts should not be forced to explain reasons that are apparent in the record. Failure to make specific findings is not fatal to the judgment. *County of Ventura, State of Cal. v. Neice,* (1982) Ind. App., 434 N.E.2d 907; *Ahnert v. Wildman, M.D. et al.,* (1978) 176 Ind.App. 630, 376 N.E.2d 1182.

■ Appellants' case against Wechsler and Nick Thiros is clearly predicated on the liability of George Platis. Because appellants have been unable to establish a valid claim against Platis, any claim against Wechsler or Thiros is *a fortiori* without merit. Summary judgment was properly granted as to all parties.

Finally, appellants contend that the trial court erred in denying their motion for sanctions, requiring Wechsler to produce certain documents. Appellants contend

that this denial amounts to a deprivation of due process but fail to explain how or why.

A trial court exercises judicial discretion in ruling on discovery issues, and this Court will only interfere in the event of an abuse of discretion. *Costanzi v. Ryan, et al.,* (1978) 175 Ind.App. 257, 370 N.E.2d 1333; *City of Bloomington et al. v. Chuckney,* (1975) 165 Ind.App. 177, 331 N.E.2d 780. In the case at bar, any theory of liability as to Wechsler was based on the liability of George Platis. Appellants have failed to establish how any documents held by Wechsler might establish any liability in Platis. The trial court did not abuse its discretion in disallowing further discovery.

The trial court's entry of summary judgment is in all respects affirmed.

Affirmed.

ROBERTSON, P.J., and SHIELDS, J., concur.